IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT EARL DAVIS,

    Petitioner,

v.                                                         CIV 06-0737 WJ/KBM

ANTHONY KANE, Warden, and
THE ATTORNEY GENERAL OF
THE STATE OF NEW MEXICO,

    Respondents.

# **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

    This matter is before the Court on Robert Davis' petition for a writ of habeas corpus under 28 U.S.C. § 2254, and motion for appointment of counsel. *Docs. 1, 6.* Because he filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its one-year statute of limitations applies. *See, e.g.,* 28 U.S.C. § 2244(d). Among other things, Respondents move to dismiss on the ground the petition is time-barred. *See Docs. 11-13*.

    The timeliness issue is dispositive and can be resolved on the record before me. Therefore, it is unnecessary to further supplement the record or hold an evidentiary hearing. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000); Rules 7, 8(a), Rules Governing Habeas Corpus Under Section 2254. Because this matter will not reach the stage where an evidentiary hearing is required, Davis' motion for appointment of counsel should be denied. *See e.g., Swazo v. Wyoming Dept. of Corrections,* 23 F.3d 332 (10th Cir. 1994) (§ 2254 case); *Karls v. Hudson,* 182 F.3d 932 (10th Cir. 1999) (unpublished) (§ 2241 case), *cert. denied,* 528 U.S. 987

(1999).

The long history underlying the state criminal proceedings is detailed in the New Mexico Supreme Court's opinion *See State v. Davis,* 134 N.M. 172, ___, 74 P.3d 1064, 1065-67 (2003). Thus, a brief overview will suffice for the limitations analysis here. Davis has a string of convictions dating back to 1981, and some of them are for crimes committed while he was incarcerated. For his last sentence in 1988 – on an escape conviction – he received a thirteen-year sentence. *See, e.g., Doc. 13,* Exh. N at 2.

Almost a decade after the last sentence was imposed, Davis filed a state habeas petition asserting that the Department of Corrections had miscalculated his sentence.[1] At issue was whether certain sentences should run concurrently or consecutively. Davis prevailed at the trial level, but the State appealed and the New Mexico Supreme Court reversed. The state's highest court concluded that state legislature decided that sentences for crimes committed while incarcerated ***must*** run consecutively. Therefore, judges have no discretion to have the sentences run the sentences concurrently. *See, e.g., Davis,* 134 N.M. at ___, 74 P.3d at 1065-66.

Throughout these protracted state proceedings, Davis was represented by counsel. The habeas petition was filed on May 5, 1997. The New Mexico Supreme Court did not issue its decision until May 28, 2003, then denied a motion for reconsideration on August 12, 2003 and issued its mandate that same day remanding for "further proceedings if any, consistent and in conformity with" its May 28, 2003 opinion. *Doc. 13,* Exh. W; *see also id.,* Exhs. R-V. The record is devoid of any other state proceedings except, for reasons that are not explained, years later on January 9, 2006.

---

[1] Davis argued that this "result[ed] in a protracted sentence, thereupon, [his] state and U.S. Constitutional rights have been vitiated pursuant to the Fourteenth and Eight amendments" of the United States and New Mexico constitutions. *Doc. 13,* Exh. G at 4.

In light of the New Mexico Supreme Court's May 28, 2003 opinion, the state trial court issued an order "quashing" its previous order granting habeas relief.

Davis filed this federal habeas petition on August 14, 2006 challenging the New Mexico Supreme Court's May 28, 2003 decision. He maintains that the court incorrectly interpreted the state statute and legislative intent and, therefore, denied his right to due process under the Fourteenth Amendment. *See id.* at 6. Respondents recognize that this "application for habeas relief does not relate to Petitioner's convictions, but rather the sentence calculation of those various convictions." *Doc. 12* at 3.

Because the federal petition contests the way his sentence is calculated, it should be construed as one under 28 U.S.C. § 2241:

> The district court noted that Hamm's habeas petition should be construed as a § 2241 petition because he was challenging the execution of his sentence rather than the validity of his conviction. We agree and construe the § 2254 petition as a § 2241 petition. *See McIntosh v. United States Parole Comm'n,* 115 F.3d 809, 811 (10th Cir. 1997) ("Petitions under § 2241 are used to attack the execution of a sentence, in contrast to § 2254 habeas and § 2255 proceedings, which are used to collaterally attack the validity of a conviction and sentence." (citations omitted)).

*Hamm v. Saffle,* 300 F.3d 1213, 1216 (10th Cir. 2002). Even when a petition is brought under § 2241, the AEDPA statute of limitations principles nonetheless apply because Davis is in state custody. 28 U.S.C. § 2244(d)(1) ( "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgement of a State Court."); *see also, e.g., Burger v. Scott,* 317 F.3d 1133, 1138 (10th Cir. 2006) (" applications for writs of habeas corpus challenging the execution of a state sentence under § 2241 are subject to a one-year period of limitations.").

The AEDPA statute contains alternate triggering dates, two of which are potentially applicable here: the later of either "the date on which the judgment became final" or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(A), (D).  As I understand it, even though Respondents concede this is not a challenge to the conviction, they argue that the triggering date should be the 1980's when Davis' convictions became final.  They further contend that because the convictions became final before the effective date of AEDPA – April 24, 1996 – Davis had only a one-year grace period within which to begin state habeas proceedings and thereby toll the statute. Yet he did not file his state habeas petition until May 5, 1997, twelve days after the one-year grace period.  The AEDPA's grace period had lapsed, and none of the state proceedings tolled it.  *See Doc. 12* at 3-4.   Respondents' computation and analysis of the law is correct if the proper triggering date is when the last conviction became final.  *See, e.g., Dunn v. Workman,* 172 Fed. Appx. 238, 241 (10th Cir. 2006) (using that alternative in a case involving challenge to the calculation of a sentence under § 2241).

The same result obtains under the "discovery" triggering alternative, because the record clearly demonstrates that Davis became aware of the Department of Corrections method of calculation ***before*** the effective date of AEDPA.  For example, Davis' own explanation in the state habeas petition indicates that he was aware of the method of calculation being used years before he pursued any action.  In explaining why he had not raised the issue earlier, Davis stated that because he "still had time left to serve on later convictions, there was no rush to challenge these issues."  *Doc. 13,* Ex. G at 4.  Moreover, documents filed by his attorney to establish exhaustion of administrative remedies indicate that Davis knew of the alleged miscalculation in December 1990 and instituted

4

administrative proceedings ending in January 1991 to clear up the matter. *See id.,* Exh. I at 4, 6; *see also Dulworth v. Evans,* 442 F.3d 1265, 1268 (10th Cir. 2006) (when "a petitioner timely and diligently exhausts his administrative remedies, § 2244(d)(1)(D)'s one-year limitation period does not commence until the decision rejecting his administrative appeal becomes final.").

Though aware of the facts giving rise to his claim some five years prior to the effective date of AEDPA, and further given an additional "grace" year to either file his federal petition or initiate state proceedings that would toll the statute, Davis failed to do so. *See* 28 U.S.C. § 2244(d)(2). Consequently, his federal petition is time-barred. *See, e.g., Dunn,* 172 Fed. Appx. at 240 ("The action that constitutes the predicate to Dunn's claim for relief is the Oklahoma Department of Corrections' decision to start the service of his life sentences after allegedly discharging his twenty-year sentences on September 9, 2000. The record indicates that Dunn became aware of the challenged action on or about that date.").

Davis asserts that the prison mailbox rule rendered his state habeas petition timely because the certificate of service is dated April 14, 1997. *See Doc. 14* at 3. However, the prison mailbox rule is inapplicable in New Mexico to determine whether a state petition was "properly filed" under § 2244(d)(2). Instead, the date the state petition is filed is the critical date. *See, e.g, Garcia v. Shanks,* 351 F.3d 468, 471-72 (10th Cir. 2003); *Adams v. LeMaster,* 223 F.3d 1177, 1183 (10th Cir. 2000), *cert. denied,* 531 U.S. 1195 (2001).

Even assuming for the purposes of argument that the New Mexico Supreme Court's decision qualifies as a "newly-discovered factual predicate" under 2244(d)(1)(D), the federal petition is nevertheless time-barred. The state court issued its decision in May 2003 and denied reconsideration in August 2003. Yet Davis waited three years to file the federal petition. He seems to suggest that

5

the long delay between the mandate and the trial court's order "quashing" the writ somehow excuses his tardy federal filing. *See Doc. 14* at 1, 2. I disagree.

As the Eight Circuit recently observed:

> Whether [an] appeal was "pending" for purposes of § 2244 is a matter of federal law. *Mills v. Norris,* 187 F.3d 881, 883 (8th Cir. 1999). The governing federal law, in turn, requires an examination of the state court procedures. In *Carey v. Saffold,* the Supreme Court instructed that an application is pending [for purposes of § 2244(d)(2)] as long as the ordinary state collateral review process is "in continuance" - i.e., "until the completion of" that process. . . . Thus, we must examine the particular state's procedure to determine when the process has reached completion or final resolution.

*Payne v. Kemna,* 441 F.3d 570, 571-27 (8th Cir. 2006). The Supreme Court has explained in more detail that the key to determining whether state proceedings are "pending" is whether the matter is finally resolved by the state courts or whether there is another avenue for the petitioner to pursue. The function of the state procedural rule, rather than its label, controls:

> The dictionary defines "pending" (when used as an adjective) as "in continuance" or "not yet decided." Webster's Third New International Dictionary 1669 (1993). . . . That definition, applied in the present context, means that an application is pending as long as the ordinary state collateral review process is "in continuance"- i.e., "until the completion of" that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains "pending."
>
> \* \* \* \* \*
>
> Ordinarily, for purposes of applying a federal statute that interacts with state procedural rules, we look to how a state procedure functions, rather than the particular name that it bears.

*Carey v. Saffold,* 536 U.S. 214, 219-23 (2002) (citations omitted).

Here, as a functional matter, the New Mexico Supreme Court decision put an end to the

habeas proceedings. When it decided that Davis was not entitled to the habeas relief that he had been granted by the trial court, it simply remanded for an entry of "judgment denying Defendant's writ of habeas corpus." *Davis,* 134 N.M. at ___, 74 P.3d at 1070. After the denial of rehearing, there were no other state avenues of relief for Davis to pursue and the question of habeas relief was "final" for all purposes. In New Mexico, the "trial court has only such jurisdiction on remand . . . as is conferred by the opinion and mandate of the appellate court." *Apodaca v. Unknown Heirs of Following Persons Who Are Adjudged to be Owners and Proprietors of Tome Land Grant,* 98 N.M. 620, 625, 651 P.2d 1264, 1269 (1982).

Here, the trial court's only jurisdiction was limited to entry of an entirely ministerial order. The fact that it delayed doing so for years did not, in my view, render the state habeas proceedings "pending" for AEDPA purposes after the denial of rehearing.[2] Buttressing this conclusion is the fact that no federal court has defined the "pending" period under § 2244(d)(2) as extending beyond the date of the mandate.[3]

---

[2] *C.f., Serrano v. Williams,* 383 F.3d 1181, 1185 (10th Cir. 2004) (lack of a mandate after denial of certiorari did not extend time petition was "pending" because "[o]ne would not expect a mandate to issue from a denial of certiorari . . . as there is no action for the lower court to take once the petition for writ of certiorari is denied;" but holding that time during which could file petition for rehearing was included in period during which petition was "pending"); *Barnett v. LeMaster,* 167 F.3d 1321, 1323 (10th Cir. 1999) (noting that the word "pending" in § 2244 encompasses "all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application").

[3] In the Ninth Circuit the mandate does not mark the conclusion of review.

> The Ninth Circuit has held that it is the decision of the state appellate court, not issuance of the mandate, that signals the conclusion of review. *See White v. Klitzkie,* 281 F.3d 920, 923 n. 4 (9th Cir. 2002) (citing *Wixom v. Washington,* 264 F.3d 894, 897-98 (9th Cir. 2001)). . . .
>
> Petitioner's assertion to the contrary, the Ninth Circuit's decisions in both *White* and *Wixom* dictate the result in this case. In both cases, the Ninth

7

Finally, no grounds for equitable tolling exist. Equitable tolling applies in "rare and exceptional circumstances" and is only available only if Davis establishes that: (1) he diligently pursued his claims, ***and*** (2) failed to file due to extraordinary circumstances beyond his control. Davis explains that he waited to pursue federal habeas relief because he was in federal custody and was to finish the federal sentence in five years – he "saw no logical reason to continue the instant case if he was to be set free." *Doc. 14* at 2. He was released from custody in 2004, and it was not until "mid-December of 2005" when he was "suddenly . . . picked up and re-incarcerated on a fugitive

---

> Circuit recognized that the issuance of a mandate is a ministerial act and is not an event which marks the conclusion of review. While the ultimate issue resolved by the Ninth Circuit in *Wixom* was the issue of when a conviction becomes final for purposes of § 2244(d)(1)(A), the Court's discussion of the import of the mandate in state post-conviction proceedings is still relevant to the issue of when a state post-conviction is deemed pending for purposes of § 2244(d)(2).
>
> And, in fact, the Ninth Circuit made this point clear when, in the *White* case, it relied on *Wixom* to resolve the question of whether it was the decision of the appellate court, or the entry of the mandate, which marks the conclusion of review for purposes of statutory tolling under § 2244(d)(2).

*Wetton v. Lehman,* 2006 WL 1303108 *4 (W.D. Wash. 2006).

In Florida, the mandate does:

> The AEDPA's statue of limitations is tolled for the time "during which a properly filed application for State post-conviction or other collateral review ⋯ is pending." 28 U.S.C. § 2244(d)(2). In Florida, a state court of appeals' order denying a rehearing on its affirmance of the state trial court's denial of a motion for post-conviction relief is pending until the mandate issues. *See Hodges v. State,* 709 So.2d 620, 621 (Fla. 1st Dist.Ct.App.1998). We conclude, therefore, that the district court erred in failing to find that Nyland's motions were pending until the mandates issued.

*Nyland v. Moore,* 216 F.3d 1264, 1267 (11th Cir. 2000).

warrant by New Mexico" that he decided to pursue the matter again. *Id.* This assertion conclusively demonstrates that Davis did not act with the requisite diligence, which alone defeats the equitable tolling claim. Nor are any "extraordinary" circumstances present to meet the second required showing.[4]

Wherefore,

**IT IS HEREBY RECOMMENDED AS FOLLOWS:**

1. This § 2254 petition be construed as a § 2241 petition;

2. Respondents' motion to dismiss *(Doc. 11)* be granted in part;

3. Petitioner's motion for appointment of counsel *(Doc. 6)* be denied; and

4. This action be dismissed with prejudice as untimely.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] *E.g., Gibson v. Klinger,* 232 F.3d 799, 808 (10th Cir. 2000) *("**Moreover,** a petitioner must diligently pursue his federal habeas claims)* (emphasis added); *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000) ("[equitable tolling] is ***only*** available when an inmate diligently pursues his claims ***and*** demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control.") (emphasis added), *cert. denied,* 531 U.S. 1194 (2001); *see also United States v. Lee,* 163 Fed. Appx. 741, 743 (10th Cir. 2006) (emphasizing the disjunctive nature of the inquiry, citing *Gibson* and *Marsh); Berry v. Oklahoma,* 163 Fed. Appx. 703, 704 (10th Cir. 2006) ("The magistrate judge also rejected equitable tolling because Mr. Berry failed to show extraordinary circumstances justifying tolling; moreover, the lack of diligence with which Mr. Berry pursued his claims, makes equitable tolling inappropriate."). A prisoner may also establish equitable tolling by "actual innocence," but that is not at issue here. *E.g., Lee,* 163 Fed. Appx. at 743.